IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Marvin Carter, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 17 CV 3690 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| John R. Baldwin, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the following reasons, the court grants the motion to dismiss filed by Wexford Health Sources, Inc. and Timothy Chamberlain, M.D. ("Wexford defendants) [39]. The court grants in part and denies in part the motion to dismiss filed by Illinois Department of Corrections personnel John Baldwin, Christopher Barnhart, Sherry Benton, Max Blackburn, and Lisa Minter ("IDOC defendants") [46]. The Wexford defendants are dismissed as defendants, as are IDOC defendants Barnhart, Benton and Blackburn. Defendant Baldwin remains in the case as to Count II and defendant Minter remains in the case as to Counts III, IV and V. Defendants Lashard Cameron and Janet Wheat remain in the case as to Count IV

## STATEMENT- OPINION

This matter pertains to the custody and care of Marvin Carter while incarcerated by the IDOC. Plaintiff Marvin Carter has filed an action against several defendants in connection with his medical treatment and lack of accommodation for his disability while incarcerated at the IDOC, specifically Dixon Correctional Center ("DCC"). Plaintiff names as defendants Wexford Health Sources, Inc., Wexford physician Dr. Timothy Chamberlain, Acting Director of the IDOC John R. Baldwin, IDOC nurse Lisa Minter, IDOC Administrative Review Board member Sherry Benton, ADA coordinators at Dixon Correctional Center Christopher Barnhart and Max Blackburn, as well as Dixon Correctional Center educational program personnel Lashard Cameron and Janet Wheat.

On May 16, 2017, plaintiff filed his complaint [1]. On August 18, 2017, the Wexford defendants filed a motion to dismiss the claims against them [39]. On September 5, 2017, the IDOC defendants filed a motion to dismiss the claims against them [46], along with a memorandum of law in support of their motion [47]. On October 16, 2017, plaintiff filed responses to the defendants' motions to dismiss [54; 55]. On November 9, 2017, the Wexford defendants filed a reply to plaintiff's response [59]. On November 22, 2017, the IDOC defendants filed their reply [61].

In reviewing the parties' respective motions to dismiss, the court is required to "accept as true all factual allegations in the [] complaint and draw all permissible inferences in the plaintiff's favor." *Alamo v. Bliss*, 864 F.3d 541, 548-49 (7th Cir. 2017) (internal quotations and alterations omitted). "A complaint will survive a motion to dismiss for failure to state a claim if it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "That is, while a plaintiff need not plead detailed factual allegations to survive a motion to dismiss, []he still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for [his] complaint to be considered adequate." *Id*. (internal quotations and alterations omitted).

I. Factual Background

The following facts are taken from plaintiff's complaint.

Plaintiff, Marvin Carter, was incarcerated at the DCC from mid-2015 through January 2017. Plaintiff is deaf and mute and suffers from sickle cell disease – a hereditary blood disorder which requires careful monitoring and treatment. Plaintiff is fluent in American Sign Language ("ASL") - his best (and sometimes only), effective means of communication. [1] at 2. Plaintiff requires an ASL interpreter to assist him in understanding complex topics related to his medical needs. Defendants at DCC knew plaintiff had been diagnosed with sickle cell disease and required ASL interpreters, yet failed to reasonably accommodate his disability. *Id*.

Plaintiff alleges he was incarcerated at the DCC for five months before the Americans with Disabilities Act ("ADA") coordinator met with him to discuss his need for accommodations. Plaintiff submitted numerous grievances indicating that defendant Minter was hurting him while dressing his wounds (stemming from his sickle cell disease), and that he needed an interpreter to help the nurse better understand his medical needs. *Id*. at 7- 8. In his complaint, plaintiff refers to the grievances he had filed noting that he had told defendant Minter numerous times she was hurting him by pulling the tape off of his feet, aggressively wiping the wounds, and holding down his feet in order to put on cream that burned his skin. *Id*. at 8-9. Plaintiff claims his grievances went as high as the IDOC Administrative Review Board (of which, defendant Benton is a member). *Id*. at 9.

In his complaint, plaintiff provides 12 examples of instances from August of 2015 through October of 2016, where he requested a sign language interpreter to assist him in communicating his medical issues to the medical staff. *Id*. at 10. Plaintiff alleges in March of 2016, defendant Barnhart "recognized that Mr. Carter must be provided [] accommodation." *Id*. at 11. Plaintiff quotes defendant Barnhart as stating, "[a]ccording to Administrative Directive 04.01.111, communication accommodations may be requested when 'the information being relayed is complex, exchanged for a lengthy period of time, or involves legal due process. This may include, but is not limited to, communications such as medical and mental health services.'" *Id*. According to plaintiff, defendant Barnhart directed that plaintiff be provided interpreter services "when

2

the aforementioned medical services are being provided." *Id*. Plaintiff goes on to state that, despite the fact that an interpreter was present at a "handful" of meetings with doctors and nurses at the DCC, "nothing changed." *Id*. Plaintiff further alleges he was denied medical treatment for three days up through a week on account of the lack of an interpreter. *Id*. at 12.

Plaintiff also complains he was "expelled" from educational programs at the DCC due to the fact he was not provided a sign language interpreter. *Id*. at 15-16. Plaintiff claims he filed multiple grievances in the spring and summer of 2016 requesting an interpreter so he could participate in educational programs. Plaintiff alleges his grievances and requests were denied, he was intentionally discriminated against by defendants Baldwin, Cameron and Wheat, and was not able to take advantage of the DCC's educational programs and better himself. *Id*.

In addition to being denied the reasonable accommodation of an interpreter, plaintiff also alleges defendants prevented him from receiving blood transfusions necessary to treat his sickle cell disease and other needed medical care. *Id.* at 13-14. Plaintiff alleges he suffered two sickle cell attacks while at the DCC, both requiring hospitalization. The first attack occurred in May of 2016, where, apparently, plaintiff was transferred to the University of Illinois at Chicago and remained hospitalized there for almost two weeks. *Id*. at 13. After his return to the DCC, plaintiff's condition worsened and in July, plaintiff provided defendant Chamberlain a note in the hallway indicating that he believed he needed a blood transfusion. *Id*. at 14. In October of 2016, plaintiff suffered a second sickle cell attack and was, again, hospitalized. *Id*. Plaintiff alleges he suffered injuries due to defendants' actions. Plaintiff claims he exhausted all administrative remedies available to him prior to the filing of the lawsuit.

II. Analysis

    A.    Plaintiff's claims under ADA and Rehabilitation Act – Defendant Baldwin

Count I and Count II of plaintiff's complaint alleges violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act, respectively, as against defendant Baldwin in his official capacity as the acting director of the IDOC. By naming defendant Baldwin in his official capacity, plaintiff has, in effect, brought these claims against the IDOC. *Carver v. LaSalle County*, 243 F.3d 379 (7th Cir. 2001). Plaintiff alleges defendant Baldwin failed to provide him with a qualified interpreter in order for him to participate in educational programs and receive adequate medical treatment. Defendant Baldwin has moved to dismiss both counts.

To state a claim under Title II of the ADA, a plaintiff must allege he is a "qualified individual with a disability, that he was denied the benefits of services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). 42 U.S.C. § 12132. However, while the ADA applies to prisons, the Seventh Circuit has held, under the guidance of *Erickson v.*

*Board of Governors for Northeastern Illinois University*, 207 F.3d 945 (7th Cir. 2000) and *Stevens v. Illinois Department of Transportation*, 210 F.3d 732 (7th Cir. 2000), plaintiff must raise his claims under the ADA in state court. "*Erickson* and *Stevens* hold that § 5 of the fourteenth amendment does not provide Congress with authority to enact the ADA. Because it rests on the Commerce Clause rather than § 5, the eleventh amendment precludes private litigation against the state in federal court." *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000). Count I of plaintiff's complaint is, therefore, dismissed.

While a claim under the Rehabilitation Act is "functionally identical" to an ADA claim, the analysis differs slightly. The Rehabilitation Act requires the plaintiff to allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program or activity because of his disability. *Wagoner*, 778 F.3d at 592. (citing *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012)). However, claims under the Rehabilitation Act are not restricted to public entities, and the relevant entity must accept federal funds. *Ruffin v. Rockford Memorial Hosp.*, 181 Fed. Appx. 582, n.** (7th Cir. 2006). 29 U.S.C. § 794. As to the Eleventh Amendment, Illinois has waived sovereign immunity as a precondition to receiving "federal largess." *Stanley*, 213 F.3d at 344. Therefore, plaintiff's claim under the Rehabilitation Act is not barred by the Eleventh Amendment.

In order to sustain a claim under the Rehabilitation Act, plaintiff must plead facts which plausibly support each element of his claim. *Ashcroft*, 556 U.S. at 678. First, plaintiff states in his complaint he is deaf and mute. Therefore, he qualifies as an individual with a disability under 42 U.S.C. 12102(1)(A) ("The term 'disability' means, with respect to an individual – a physical…impairment that substantially limits one or more major life activities of such individual." "Hearing" is a major life activity under section 12102(2)(A).). This leaves the third prong of the Rehabilitation Act, "the defendant denied [plaintiff] access to a program or activity because of his disability."

In his motion to dismiss, defendant Baldwin presents a brief, undeveloped argument that "[p]laintiff's challenge to the quality of the medical services that he received is not cognizable under the ADA or Rehabilitation Act."[1] In support of this position, defendant Baldwin cites to *Resel v. Fox*, 26 Fed. Appx. 572 (7th Cir. 2001). However, in *Resel*, the court held that plaintiff did not allege that he was discriminated against because he was disabled and that simply a claim for inadequate medical treatment at the prison would not qualify as a proper claim under the ADA. *Resel* further cites to *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996). In *Bryant*, the court found that the plaintiff did not allege discrimination, only that he was not given a special accommodation at the prison (i.e. guardrails for his bed). *Id.* at 249.

Here, plaintiff has alleged that he was not allowed to attend school programs at the DCC because the facility, in discrimination of his hearing disability, refused to provide him with a sign language interpreter. The court finds that an educational program at the DCC qualifies as a "program or activity" under the Rehabilitative Act. 29

---

[1] Defendant Baldwin does not address this issue in his reply brief.

U.S.C. § 794. Regarding whether the DCC has denied plaintiff access to the program (to substantiate a claim under the Act), the Seventh Circuit has held that "[r]efusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally." *Jaros*, 684 F.3d at 672. In *Norfleet v. Walker*, 684 F.3d 688 (7th Cir. 2012), the Seventh Circuit reversed the district court's dismissal of plaintiff's action, finding that wheelchair-bound plaintiff/prisoner adequately alleged a violation of the Rehabilitation Act where he complained that the IDOC refused to allow him to participate in outdoor recreational activities at the prison because of his disability. *Id*. at 689-90. Likewise, the court finds that plaintiff has adequately alleged a violation of the Rehabilitation Act by complaining that defendant Baldwin (IDOC) denied him access to educational programs at the DCC based on his hearing disability. Plaintiff also alleges in his complaint a violation of the Rehabilitation Act based on the DCC's failure to provide him with a sign language interpreter for his medical visits. He states the absence of a sign language interpreter diminished the quality of his medical care and, therefore, the facility discriminated against him based on his disability. While this is a closer call than plaintiff's allegations regarding the denial of educational programs, the court finds, at this stage of the litigation, that plaintiff has plausibly pleaded a violation of the Rehabilitation Act and denies defendant Baldwin's motion to dismiss Count II of `plaintiff's complaint.

   B.  Plaintiff's claims under 8th and 14th Amendments

  Defendants have moved to dismiss Count III of plaintiff's complaint – violation of the Eighth and Fourteenth Amendments based on cruel and unusual punishment. The IDOC defendants and the Wexford defendants each argue plaintiff has failed to state a plausible cause of action for deliberate indifference against them as to plaintiff's medical care and treatment at the DCC, in violation of 42 U.S.C. § 1983.

  The Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon the states to provide adequate medical care to incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle*, 429 U.S. at 103). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Estelle*, 429 U.S. at 104. A claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (quoting *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)).

Additionally, the doctrine of *respondeat superior* does not apply to Section 1983 actions. To be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right…A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Chavez v. Ill. State Police*, 251 F.3d 612, 651-52 (7th Cir. 2001) (quotations omitted). "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id*. *See also Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (a government official is only liable for his own misconduct to sustain a constitutional violation under §1983).

As there is no dispute regarding plaintiff's "objectively serious medical condition," the court will address each defendant's argument regarding "deliberate indifference" to plaintiff's condition.

> i. Defendants Christopher R. Barnhart and Max Blackburn – ADA Coordinators at Dixon Correctional Center

Plaintiff alleges in his complaint that defendants Barnhart and Blackburn – ADA coordinators during some or all of plaintiff's time at the DCC – were aware of plaintiff's serious medical needs (i.e. his sickle cell disease and the ulcers on his legs and feet (as a result of the disease)), that he required regular wound care, and that he made numerous requests and filed multiple grievances regarding his need for a sign language interpreter to assist in his medical care. Plaintiff further alleges that defendant Barnhart recognized that plaintiff should be provided an interpreter but made no effort to see that he was provided an interpreter and, further, willfully ignored the continuing failure to provide this service to plaintiff. [1] at 6-7, 9-11.

In his complaint, plaintiff alleges defendant Barnhart, in response to one of plaintiff's grievances requesting interpreters during (even routine) medical appointments, recognized that plaintiff "must be provided this accommodation." Barnhart explained that "[a]ccording to Administrative Directive 04.01.111, communication accommodations may be requested when 'the information being relayed is complex, exchanged for a lengthy period of time, or involves legal due process. This may include, but is not limited to, communications such as medical and mental health services.'" *Id*. at 11. Plaintiff goes on to allege that "[d]efendant Barnhart directed that [plaintiff] be provided 'interpreter services when the aforementioned medical services are being provided.'" *Id*.

As to defendant Blackburn, plaintiff alleges on two occasions he submitted "Offender Request" slips to defendant Blackburn requesting an interpreter in order to communicate with the sick call nurse. *Id*. at 10.

Plaintiff's complaint fails to allege defendants Barnhart and Blackburn acted with deliberate indifference toward his serious medical need. "Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs v.*

*Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (citations omitted). Plaintiff acknowledges in his complaint that communication accommodations (i.e. sign language interpreter) may be requested by an inmate when the information to be conveyed is "complex, exchanged for a lengthy period of time, or involves legal due process." [1] at 11. Plaintiff further states that he was provided a sign language interpreter on a "handful" of occasions. Plaintiff was, unquestionably, seen and treated by medical personnel at the DCC on numerous occasions and, as described throughout his complaint, was able to communicate pain and location of pain to the medical staff without the use of an interpreter. While the court recognizes that plaintiff may have needed the assistance of a sign language interpreter for medical visits that may have been more "complex," or "lengthy," it cannot be said, based on the complaint, that plaintiff did not receive the accommodation for those types of visits. Regardless, it cannot be found, by the face of the complaint, that defendants Barnhart's and Blackburn's conduct toward plaintiff rises to the level of "deliberate indifference" to plaintiff's need for a sign language interpreter during his medical visits. On the contrary, it appears defendant Barnhart was well aware of plaintiff's request for an interpreter, was familiar with IDOC's directive on when an interpreter can be requested and, presumably, he (or defendant Blackburn) did provide plaintiff with an interpreter on a "handful" of occasions. The motion to dismiss defendants Barnhart and Blackburn from Count III of plaintiff's complaint is granted.

As defendant Barnhart and defendant Blackburn are only named in Count III of plaintiff's complaint, they are dismissed from this action.

> ii. Defendant Sherry Benton – member, IDOC Administrative Review Board

Plaintiff alleges defendant Benton, a member of the IDOC Administrative Review Board, demonstrated deliberate indifference to plaintiff's serious medical needs by refusing to take action raised by his grievances. [1] at 9.

However, plaintiff has failed to allege that defendant Benton was personally responsible for the alleged constitutional deprivation. As recently noted by the Seventh Circuit, "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Without "personal involvement" on the part of defendant Benton, plaintiff cannot sustain a claim against her under Section 1983. The court is not persuaded by plaintiff's argument that his claims against defendant Benton are proper because defendant Benton ignored grievances that "requested assistance relating to *present* and *future* threats to [plaintiff's] health." [55] at p. 11 (emphasis in original). In addition to be difficult to understand, this argument is unsupported by any case law. Because defendant Benton was not personally involved in the conduct that gives rise to plaintiff's complaint, the court does not find her liable under Section 1983. She is dismissed from Count III of plaintiff's complaint.[2]

---

[2] For the same reasons, defendant Benton is dismissed from Count IV of plaintiff's complaint – equal protection. Therefore, defendant Benton is dismissed from this action.

### iii. Defendant Lisa Minter – DCC nurse

Plaintiff alleges defendant Minter was deliberately indifferent to his medical needs by ignoring serious threats to his health and denying him treatment on several occasions. Plaintiff complains that this lack of care resulted in two hospitalizations for worsening symptoms of his sickle cell disease. He also asserts defendant Minter directly, purposely and repeatedly caused him extreme pain while treating his ulcers. [1] at 3-4, 7-9.

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776. Nurses have an independent duty to ensure that inmates receive constitutionally adequate care. *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). "Nurses…may thus be held liable for deliberate indifference where they knowingly disregard a risk to an inmate's health." *Perez*, 729 F.3d at 779.

Plaintiff's claims that defendant Minter, among other things, used a wound dressing technique that caused him excruciating pain, and that despite his screaming and other non-verbal protesting, she continued to grab him, pull on him and hurt him ([1] at 8-10) plausibly state a cause of action under Section 1983. Plaintiff's complaint sufficiently alleges that defendant Minter's medical care and treatment was "blatantly inappropriate." *Perez*, 729 F.3d at 777. Like the nurse defendant in *Perez*, the court notes that discovery may uncover more information regarding whether defendant Minter's actions were, in fact, medically necessary and reasonable. Discovery may also reveal that defendant Minter provided constitutionally adequate care. However, these are questions of fact that survive this stage of the litigation. Defendant Minter's motion to dismiss Count III against her is denied.

### iv. Dr. Chamberlain – (former) Medical Director at the DCC

In his complaint, plaintiff alleges defendant Chamberlain was "responsible" for plaintiff's medical care during his stay at the DCC. Substantively, plaintiff claims defendant Chamberlain knew plaintiff suffered from sickle cell disease, knew the disease caused pain and that blood transfusion therapy reduces the risk of complications and symptoms, and was familiar with plaintiff's medical records wherein plaintiff was able to communicate his level of pain as well as the progress of the disease and his desire to have a sign language interpreter during medical visits. [1] at 6, 9-10. Plaintiff's complaint also alleges defendant Chamberlain caused plaintiff to go without treatment "for an extended period of time." As an example, plaintiff states he was not treated for "three days." *Id*. at 12. Additionally, defendant Chamberlain wrote a note in plaintiff's medical record indicating that plaintiff had stopped him in the hallway and had given him a note stating that he (plaintiff) believed he needed a blood transfusion. *Id*. at 14.

In his motion to dismiss, defendant Chamberlain argues plaintiff has failed to state a plausible claim of deliberate indifference to plaintiff's serious medical needs. The threshold issue is whether defendant Chamberlain was sufficiently involved in plaintiff's care and treatment to meet the standard required of a Section 1983 action that a defendant

must be "personally responsible" for the constitutional deprivation. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted). "[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. Although direct participation is not necessary, there must at least be a showing that [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

The court agrees with defendant Chamberlain that the most significant allegation of personal involvement of defendant Chamberlain with plaintiff is found in paragraph 50 of plaintiff's complaint. There, plaintiff recounts a notation in plaintiff's medical record where, in July of 2016, defendant Chamberlain was handed a note in the hallway by plaintiff. The note indicated that plaintiff believed he needs a blood transfusion. [1] at 14.[3] Taking all references to defendant Chamberlain in plaintiff's complaint into account, the court finds insufficient personal involvement or personal responsibility on the part of defendant Chamberlain to establish liability under Section 1983 for plaintiff's alleged constitutional deprivation. Nevertheless, even if the court were to find that defendant Chamberlain was sufficiently, personally involved in the alleged constitutional violation, defendant Chamberlain's actions do not constitute deliberate indifference.

There are no allegations in plaintiff's complaint that defendant Chamberlain had direct knowledge of a serious risk of harm to plaintiff's health. "Prison physicians will be liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." *Gonzalez v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011). "[D]eliberate indifference may be inferred…when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F. 3d 254, 261-62 (7th Cir. 1996). Plaintiff's complaint shows that plaintiff was seen regularly by the nurse at the DCC. During his medical visits, he was treated with creams for his wounds. On two occasions, plaintiff was taken to the hospital when his condition became serious enough to warrant the transfer. Even if defendant Chamberlain was directly involved in all these medical decisions (which, according to the complaint, he was not), these decisions do not qualify as a knowing disregard to plaintiff's health and safety. Deliberate indifference can be inferred when the decision is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (citation omitted). Put another way, plaintiff must show that defendant Chamberlain's judgment was so inadequate that "no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even if the court could find sufficient personal involvement, plaintiff's complaint simply does not plausibly plead that defendant

---

[3] Plaintiff's complaint alleges he was transported to the hospital on two occasion (during his approximate 20 month stay at DCC) – once in May of 2016, and again in November of 2016.

9

Chamberlain was deliberately indifferent. Therefore, his motion to dismiss Count III of the complaint is granted.

   v.  Wexford Health Sources, Inc.

In his complaint, plaintiff alleges Wexford maintains policies, including cost-cutting policies, which violated plaintiff's constitutional rights. In the alternative, plaintiff alleges that Wexford maintains widespread practices that, although they are unauthorized, are so well-settled they constitute customs or usages maintaining the force of law. Defendant Wexford argues in its motion to dismiss that plaintiff has failed to plead that Wexford has violated plaintiff's constitutional rights pursuant to *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), and, therefore, Wexford should be dismissed from Count III.[4]

Liability attaches to Wexford only if it had an unconstitutional policy or practice that caused plaintiff's alleged constitutional deprivation. To state a claim under *Monell*, a plaintiff must allege that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (citations omitted). *See also Woodward v. Corr. Med. Servs. of Ill., Inc*. 368 F.3d 917, 927 (7th Cir. 2004). A corporate entity violates an inmate's constitutional rights "if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Id*. at 927 (citations omitted). Plaintiff must allege "that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). Additionally, the policy, custom, or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward*, 368 F.3d at 927.

Defendant Wexford argues in its motion to dismiss that plaintiff's *Monell* claim must fail because plaintiff has not sufficiently plead that Wexford implemented unconstitutional policies, that anyone at the DCC followed such policies, or that such policies caused plaintiff a deprivation of his constitutional rights. Plaintiff counters his complaint sufficiently identifies a policy or practice responsible for his injuries, including Wexford's "cost-cutting" policies, and that those policies and practices were the "moving force" behind plaintiff's mistreatment.

In order to prevail on his *Monell* claim against defendant Wexford, plaintiff must plead sufficient "factual content to nudge his claim…across the line from conceivable to plausible." *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th 2011) (quotations

---

[4] Wexford cannot be held vicariously liable under a *respondeat* superior theory of liability. The Seventh Circuit in *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014) held that "*[r]espondeat superior* liability does not apply to private corporations under § 1983." *Id*. at 789.

omitted). Here, plaintiff's complaint alleges Wexford's "cost-cutting policies" caused the violation of plaintiff's constitutional rights. In the alternative, plaintiff states Wexford's widespread practices, demonstrated by the "bad acts" outlined in his complaint, resulted in the violations. However, plaintiff's conclusory allegations fail to "nudge his claim" over to plausible. Plaintiff's reference to Wexford's "cost-cutting" policies is not supported by the facts in his complaint. Nowhere in plaintiff's complaint does he equate his inadequate medical care to "cost-cutting" measures on the part of Wexford. Indeed, plaintiff admits he was taken to the hospital on two occasions to address his medical needs. He also pleads he was seen by medical staff on numerous occasions and given creams for his wounds. In his brief, plaintiff refers only to those conclusory allegations in his complaint to support his position that he has adequately identified these "cost-cutting" measures. Relatedly, plaintiff's complaint fails to identify sufficient facts to adequately allege Wexford's "widespread practice" of unconstitutional actions. He fails to identify sufficient facts in his complaint to plausibly support his *Monell* claim. Therefore, plaintiff's *Monell* claim against defendant Wexford (Count III) is dismissed.

    vi.  John R. Baldwin – acting director of IDOC

While defendant Balwin's argument that he should be dismissed from Count III of plaintiff's complaint is undeveloped (and only addressed in his reply brief), the court grants his motion to dismiss as to this claim.

Defendant Baldwin is sued in his official capacity. It is well-established that suits against government officials in their official capacity are suits against the government entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Neither a state nor its officials acting in their official capacities are "persons" subject to an action for damages under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). While official capacity suits against state officials seeking *prospective* relief are permitted under Section 1983, suits for money damages are not. *Id*. at 71. Plaintiff's complaint seeks money damages, not prospective relief. Because damage claims against a state are barred by the Eleventh Amendment, state officials may not be sued for damages in federal court in their official capacity. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). Therefore, defendant Baldwin is dismissed from Count III of plaintiff's complaint.[5]

    C.  Plaintiff's claims under the Fourteenth Amendment - Equal Protection

Plaintiff has brought an equal protection claim against the Wexford defendants and IDOC defendants Baldwin, Minter, Benton, Cameron and Wheat.[6] Defendants

---

[5] To the extent plaintiff attempts to bring claims under *Monell* against the IDOC, these claims are dismissed. The IDOC, a state agency, is not a "person" that can be sued under Section 1983. *Owens v. Godinez*, 860 F.3d 434, 437-38 (7th Cir. 2017).

[6] Defendants Lashard Cameron and Janet Wheat have not been served and no appearance has been entered on their behalf. According to the complaint, both defendant Cameron and defendant Wheat were associated with the educational programs at DCC during plaintiff's stay. Despite the

argue, generally, that plaintiff has failed to plausibly claim disparate treatment in violation of the Fourteenth Amendment.

"To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (internal quotation omitted). "Often an equal protection violation occurs when a regulation draws distinctions among people based on a person's membership in a 'suspect' class." *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Protected (or "suspect") classes include race, alienage, and national origin. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). Another typical equal protection claim is based on the denial of a fundamental right, *id.*, which includes freedom of speech and religion. *Id*. The constitutional "strict scrutiny" test is applied to an equal protection analysis under both suspect class and denial of fundamental rights. *Id*.

Here, plaintiff falls into neither category of "suspect class" nor "denial of fundamental rights." Disabled persons are not members of a suspect class for purposes of a "strict scrutiny" test under the equal protection clause. *U.S. v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999). "To withstand equal protection review, classifications which distinguish between deaf persons and others need only be rationally related to legitimate government interest." *Rewolinski v. Morgan*, 896 F.Supp. 879, 881 (E.D.Wisc. Aug. 18, 1995). "[T]he Fourteenth Amendment allows the State to single out the disabled for different treatment so long as it has a rational or legitimate purpose." *Stevens v. Illinois Dept. of Transportation*, 210 F.3d 732, 738 (7th Cir. 2000). Rational basis review requires the plaintiff to prove that (1) the state actor intentionally treated plaintiff differently from others similarly situated; (2) this difference in treatment was caused by the plaintiff's membership in the class to which he belongs; and (3) this different treatment was not rationally related to a legitimate state interest. *Smith v. City of Chicago*, 457 F.3d 643, 650-51. (7th Cir. 2006). The court, therefore, will analyze the defendants' motions to dismiss plaintiff's equal protection claim under the rational basis review.

      i.      Defendants Chamberlain and Wexford

---

lack of service, the court will, *sua sponte*, include these defendants in this opinion. "A *sua sponte* [decision] may apply to a party prior to service of the complaint, particularly where, as here, plaintiff has had an opportunity to respond to a motion to dismiss. *see, e.eg., Baker v. Director, United States Parole Commission*, 916 F.2d 725 (D.C. Cir. 1990) (court upheld district court's decision to dismiss complaint *sua sponte* before service of process)." *Burgess v. Michaelson*, Case No. 93 C 2680, 1993 WL 348511 at *1 (N.D. Ill. Sept. 7, 1993). *See also*, *Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir. 1986) (district court may, *sua sponte*, enter judgment in favor of additional non-moving defendants if the motion raised by first defendants is "equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion") (citation omitted).

For reason similar to those recited in section B. iv., *supra*, plaintiff has failed to plausibly plead that defendant Chamberlain, by not properly treating plaintiff's sickle cell disease and preventing him from receiving needed blood transfusions, treated plaintiff differently than other inmates at the DCC without a disability.  As noted above, it is questionable whether plaintiff has properly pleaded that defendant Chamberlain had sufficient personal involvement with plaintiff's care to justify his status as a defendant; nevertheless, plaintiff's complaint is further deficient in pleading defendant Chamberlain (1) intentionally treated plaintiff differently than other inmates with medical needs, or (2) treated plaintiff differently than others because plaintiff is deaf.  Because plaintiff has failed to sufficiently plead the first two elements of an equal protection/rational basis review, the court need not decide if plaintiff's complaint states a legitimate state interest in defendant Chamberlain's alleged actions.

As to Wexford, the court reiterates its reasoning in section B.v., *supra*.  Plaintiff has failed to properly plead a *Monell* action against Wexford.  The same reasoning found above regarding plaintiff's insufficient pleading is the same reasoning that would apply to plaintiff's claim that Wexford is liable to plaintiff under the equal protection clause.

For these reasons, defendants' motion to dismiss Count IV as to defendants Chamberlain and Wexford is granted.

### ii. Defendant John R. Baldwin – (acting) director of the IDOC

Plaintiff cannot sustain a claim against defendant Baldwin for violation of the Fourteenth Amendment – equal protection – for the same reasons he cannot sustain his claims under Count III – deliberate indifference.

As noted above, defendant Baldwin is sued in his official capacity as the acting director of the IDOC.  A suit against a state official in his official capacity is deemed to be a suit against the state.  Because damage claims against a state are barred by the Eleventh Amendment, [absent any exception] state officials may not be sued for damages in federal court in their official capacity.  *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992).  Therefore, defendant Baldwin's motion to dismiss Count IV is granted.

### iii. IDOC defendants Minter, Cameron and Wheat[7]

The IDOC defendants dedicate three sentences in their opening brief to the argument that plaintiff has failed to state a plausible claim for relief under the equal protection clause.  Neither party addressed the equal protection claim under the rational review analysis.  Despite the deficiencies in the briefs, the court finds that plaintiff has sufficiently pleaded a claim under the equal protection clause against IDOC defendants Minter, Cameron and Wheat.

Plaintiff claims the IDOC defendants intentionally mistreated him because he is deaf and mute and this mistreatment was not rationally related to a legitimate state

---

[7] *See* section B.ii., *supra*, addressing the dismissal of defendant Benton.

interest. For the same reasons the court denied defendant Minter's motion to dismiss under plaintiff's Fourteenth Amendment – deliberate indifference claim, the court denies her motion to dismiss as to plaintiff's equal protection claim. Plaintiff's complaint alleges defendant Minter mistreated plaintiff by ignoring plaintiff's attempts to communicate to defendant Minter his pain during her treatment of him. While this may not be enough to sustain a claim under the rational basis review of an equal protection claim, at this stage in the litigation, it plausibly states a claim.

According to plaintiff's complaint, defendants Cameron and Wheat were associated with the educational programs at the DCC during plaintiff's stay. Plaintiff complains that he was dismissed from the educational programs at the DCC because of his hearing disability. It is unclear from the complaint who from the DCC (or IDOC) was involved in the decision to prevent plaintiff from continuing in these programs, but for purposes of a motion to dismiss, at this stage in the case, the court finds that plaintiff has plausibly stated a claim that his constitutional rights were violated, under the equal protection clause, by not having the opportunity to participate in these educational programs. Therefore, the court finds that the suit may proceed against defendants Cameron and Wheat as to Count IV.

D. Plaintiff's claims of intentional infliction of emotional distress

Plaintiff brings a claim of intentional infliction of emotional distress ("IIED") against defendants Chamberlain and Minter. He alleges the defendants' conduct was "extreme and outrageous," and that defendants knew their failure to provide plaintiff with medical care needed to treat plaintiff's sickle cell disease would cause plaintiff to suffer severe emotional distress. [1] at 25. Defendants argue plaintiff has failed to plausible state this claim against them.

To state a claim for IIED under Illinois law, "the plaintiff must allege that the defendant's conduct was extreme and outrageous, the defendant knew it was highly probable that her conduct would cause the plaintiff severe emotional distress, and the conduct did, in fact cause the plaintiff' severe emotional distress." *Williams v. Erickson*, 962 F.Supp.2d 1038, 1042 (N.D. Ill. Aug. 21, 2013). *See also Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Thomas v. Fuerst*, 345 Ill.App.3d 929, 936 (1st Dist. 2004). To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad, Corp.*, 607 N.E.2d 201, 211 (1992)).

i. Defendant Chamberlain

For the same reasons articulated above in sections B.iv. and C.i., defendant Chamberlain's motion to dismiss Count V is granted. There is insufficient facts to support a claim that defendant Chamberlain was personally involved in the medical care and treatment of plaintiff. Even if he was, the facts set forth in the complaint do not

plausibly allege that defendant Chamberlain's conduct toward plaintiff was "extreme" or "outrageous."

                ii.        Defendant Minter

Plaintiff's IIED claim against defendant Minter is a closer call. As noted above, plaintiff has alleged defendant Minter, nurse at the DCC, caused him extreme pain in the treatment of his ulcers and wounds.

Courts have found that allegations sufficient to support a deliberate indifference claim may also be sufficient to support an IIED claim under federal notice pleading standards. *See Taylor v. Wexford Health Sources, Inc.*, Case No. 15C5190, 2016 WL 3227310 at *5-6 (N.D. Ill. June 13, 2016); *Piercy v. Whiteside County, Ill.*, Case No. 14C7398, 2016 WL 1719802 at *8 (N.D. Ill. April 29, 2016); *Awalt v. Marketti*, 74 F.Supp.3d 909, 942 (N.D. Ill. 2014); *Doe ex rel. Doe v. White*, 627 F.Supp.2d 905, 921 (C.D. Ill. 2009). Therefore, while plaintiff may not, ultimately, prevail against defendant Minter regarding her treatment of him at the DCC, at this stage in the litigation, the court finds plaintiff has sufficient pleaded a claim of IIED against her.

For the foregoing reasons, the court grants the motion to dismiss filed by defendants Chamberlain and Wexford Health Sources, Inc. ("Wexford defendants") (Counts III, IV and V), in its entirety. The Wexford defendants are, therefore, dismissed as defendants.

The court grants defendant Baldwin's motion to dismiss Count I. The court denies defendant Baldwin's motion to dismiss Count II. The court grants the motion to dismiss filed by defendants Barnhart and Blackburn as to Count III. Defendants Barnhart and Blackburn are, therefore, dismissed as defendants. The court also grants the motion to dismiss Count III as to defendants Benton, and Baldwin. The court denies defendant Minter's motion to dismiss Count III. The court denies the motion to dismiss Count IV as to defendants Minter, Cameron and Wheat. The court denies defendant Minter's motion to dismiss Count V.

The court orders the parties to set this case for an early settlement conference with Magistrate Judge Johnston given the nature of the allegations, various claims and multiple defendants sued. The court further notes that plaintiff has made similar but distinct claims against various defendants in Cook County in case number 15 CV 02019 in the United States District Court, Northern District of Illinois, which has been settled.

Dated: 2/01/2018                ENTER:

*Philip G. Reinhard*
_____
                      United States District Court Judge

                                Electronic Notices. (LC)