## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Marvin Carter, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 CV 3690 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| John R. Baldwin, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

For the reasons stated below, plaintiff's appeal from Magistrate Judge Johnston's order [92] denying his motion for leave to file an amended complaint [79] is overruled. Plaintiff's motion for leave to file an amended complaint [79] is denied on the merits. The court directs plaintiff to file a first amended complaint that is consistent with the court's ruling on defendants' original motion to dismiss [68], as well as consistent with this opinion, within 14 days of the date of this order.

### STATEMENT-OPINION

On December 1, 2017, the court entered an order granting the motion to dismiss filed by Wexford Health Sources, Inc. and Timothy Chamberlain, M.D. (the "Wexford defendants"), dismissing both as parties to this case [68]. Despite the dismissal of these defendants, the case continued with defendant Baldwin (as to Count II of the complaint); defendant Minter (as to Counts III, IV, and V of the complaint); and defendants Cameron and Wheat (Count IV of the complaint). On March 9, 2018, plaintiff filed a motion for leave to amend his complaint to state a claim for deliberate indifference against the (dismissed) Wexford defendants [79], before Magistrate Judge Johnston. After plaintiff's motion was fully briefed, Magistrate Judge Johnston denied plaintiff's motion for leave to amend. Magistrate Judge Johnston advised the parties that since this court previously dismissed the Wexford defendants with prejudice, he did not have authority to rule on plaintiff's motion for leave to amend because the motion requests the re-pleading of parties that have already been dismissed. *See* order at [92]. On April 30, 2018, plaintiff filed "objections" to the Magistrate's ruling to this court [96]. Plaintiff's objections are now fully briefed and the matter is ripe for this court's review.[1]

---

[1]  The court will not recite the facts of this case in this order as the factual background was set out sufficiently in the court's order on the defendants' motion to dismiss. *See* [68]. Suffice it to say, plaintiff, a former inmate at the Dixon Correctional Center ("Dixon"), is deaf and mute and suffers from sickle cell disease. Relevantly, plaintiff argues in his complaint(s) the Wexford defendants (as well as the IDOC defendants) were deliberately indifferent to his serious medical needs in violation of 42 U.S.C. § 1983.

This court accepts Magistrate Judge Johnston's ruling refusing to interfere with this court's order dismissing the Wexford defendants. Therefore, plaintiff's appeal from Magistrate Judge Johnston's order [92] is overruled to the extent that it argues the Magistrate should have ruled on plaintiff's motion for leave to amend on the merits. In the interest of judicial economy, and to provide plaintiff with the fullest opportunity to be heard, this court will re-visit plaintiff's motion for leave to amend his complaint [79] on the merits.

Federal Rule of Civil Procedure 54 provides: "…any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Consistent with Rule 54, despite the fact that the court adjudicated the claims against the Wexford defendants, the case continues as to other parties and claims. The court, therefore, retains jurisdiction as to all parties and claims and, thus, will review plaintiff's motion for leave to amend his complaint to re-plead deliberate indifference as to the Wexford defendants.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Wexford defendants have not given consent to plaintiff to re-plead, therefore, it is up to the court to grant leave if the court finds that "justice so requires." While the court acknowledges that motions for leave to amend should be "freely give[n]," *see Bausch v. Stryker Corp*, 630 F.3d 546, 562 (7th Cir. 2010), "a district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011) (citing *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)). Under this Seventh Circuit guidance, the court will consider plaintiff's proposed first amended complaint ("proposed complaint") under the legal sufficiency standards of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Sommerfield v. City of Chicago*, No. 06 C 3132, 2008 WL 4542954 at *4 (N.D. Ill. April 29, 2008). A motion for leave to amend a complaint "is appropriately denied when…the amendment would be futile." *Brunt v. Service Employees International Union*, 284 F.3d 715, 720 (7th Cir. 2002) (citations omitted). *See also Cohen v. American Security Insurance Co.*, 735 F.3d 601, 607 (7th Cir. 2013) ("[t]here is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim") (citing *Glassman v. Computervision Corp*, 90 F.3d 617, 623 (1st Cir. 1996)). With these standards of review in mind, the court turns to the merits of plaintiff's proposed complaint.[2]

---

[2] The court acknowledges the Wexford defendant's threshold argument that plaintiff's motion to amend is untimely. However, to the extent delay can be attributed to plaintiff's motion (filed 36 days after the court's order dismissing the Wexford defendants), the court finds plaintiff's motion not untimely. *See Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("delay…would not be sufficient on its own as a grounds for denial of leave").

**Claims against Dr. Chamberlain**

In the court's original order dismissing Dr. Chamberlain ("Chamberlain") as a defendant, the court found that plaintiff had not pled sufficient facts to allege personal involvement or responsibility on Chamberlain's part to establish personal liability under Section 1983 for plaintiff's alleged constitutional deprivation. *See* [69]. The order further noted that "[e]ven if the court could find sufficient personal involvement, plaintiff's complaint simply does not plausibly plead that defendant Chamberlain was deliberately indifferent." Plaintiff now argues his proposed complaint pleads numerous new additional facts showing Chamberlain's personal involvement in plaintiff's medical care, as well as facts substantiating his claim that Chamberlain was deliberately indifferent to his medical needs contributing to the constitutional deprivation.

"[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. Although direct participation is not necessary, there must at least be a showing that [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). There seems to be little dispute that plaintiff's proposed complaint adds many more facts alleging Chamberlain's personal involvement and participation in plaintiff's medical care. In plaintiff's first complaint, the only clear indication of Chamberlain's personal involvement in plaintiff's medical care at Dixon was an allegation that plaintiff handed Chamberlain a note in the hallway indicating that plaintiff believed he needed a blood transfusion. In plaintiff's proposed complaint, he alleges Chamberlain (as his primary physician during his stay at Dixon) personally communicated with plaintiff on "dozens of occasions" from August of 2015 through December of 2016. The proposed complaint sets out 34 specific dates of contact between plaintiff and Chamberlain. The proposed complaint also alleges "a number of other occasions" of contact, numerous "written notes" from plaintiff to Chamberlain, and "hundreds of meetings with doctors and nurses at Dixon." With these new allegations, the court finds sufficient personal involvement of Chamberlain with plaintiff during plaintiff's time at Dixon.

Next, plaintiff must overcome the hurdle of sufficiently alleging deliberate indifference on the part of Chamberlain to plaintiff's medical needs in his proposed complaint. In an effort to sufficiently plead deliberate indifference, plaintiff's complaint contains allegations that he wrote numerous notes to Chamberlain complaining about pain. Plaintiff also includes allegations that Chamberlain refused to take appropriate action during plaintiff's sickle cell anemia crises by refusing plaintiff the benefit of blood transfusions and refusing referrals to an outside medical facility. Instead, according to plaintiff's complaint, Chamberlain merely provided him with powerful pain medication and only referred him to an off-site medical facility after two days into a sickle cell crisis. Plaintiff complaint states he was sent to a medical facility outside of Dixon on two occasions – one within a day of his admittance to the Dixon infirmary, and one within two days of the onset of a sickle cell crisis. In between the time that plaintiff presented himself to Chamberlain (and other Wexford medical staff) and plaintiff's admittance to

an outside facility, plaintiff was seen and treated with pain medication and wound care. Plaintiff further pleads in his new complaint that he participated in hundreds of meetings with medical personnel at Dixon and had personal communication with Chamberlain over 30 times in 16 months. Plaintiff argues these factual allegations are more than enough to state a claim for deliberate indifference against Chamberlain. Wexford defendants counter that there is nothing in plaintiff's proposed complaint that show Chamberlain acted with deliberate indifference.

As the court noted in its ruling on defendants' motion to dismiss, "[p]rison physicians will be liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." *Gonzalez v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011). Further, "deliberate indifference may be inferred…when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Plaintiff cites to *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015) for the proposition that "[d]eliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment." *Id*. at 777. In *Perez*, the plaintiff, an inmate at the Illinois Department of Corrections, severely injured his hand at the prison. The prison nurse wrapped his hand and the doctor prescribed an antibiotic. However, plaintiff suffered an open, bleeding wound and was not taken to an outside medical facility for five days following the injury (and not until after he filed a grievance with the prison). *Id*. at 774-75. Following plaintiff's care at the outside facility, plaintiff returned to the prison where the prison medical staff refused to follow the care instructions or return plaintiff to the outside facility for follow-up care. *Id*. Plaintiff was eventually sent back to the outside facility where he received surgery; however, due to the prison's delay in providing him with adequate care, plaintiff suffered permanent damage to his hand. *Id*. The *Perez* court found plaintiff stated a claim against the prison doctor for "blatantly inappropriate" medical treatment. *Id*. at 779. Here, the court does not find *Perez* persuasive. While it is undisputed that plaintiff has a serious medical need and suffered pain while at Dixon, plaintiff's proposed complaint does not sufficiently plead that Chamberlain's decisions to treat plaintiff's sickle cell disease with powerful pain medication and wound care and send him to an outside medical facility within 48 hours (at the latest) of the serious on-set of the disease, was a "substantial departure from accepted professional judgment," or "blatantly inappropriate" medical treatment. The court finds that plaintiff's proposed complaint could not survive a motion to dismiss under Rule 12(b)(6), and therefore it would be futile to grant plaintiff's motion for leave to amend.

**Claims against Wexford Health Sources, Inc.**

Next, plaintiff argues his proposed complaint states a claim against Wexford for liability pursuant to *Monell v. N.Y. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). His argument is two-fold - the proposed complaint identifies several specific Wexford policies and practices, and explains how they led to plaintiff's constitutional deprivations.

First, plaintiff identifies Wexford's formal policy on how to treat sickle cell anemia. Under the policy, the primary course of treatment is to monitor the inmate's CBC (complete blood count), maintain vaccinations, and consider hydroxurea (a drug). The formal policy also requires that sickle cell be "managed" with analgesics, hydration, and oxygen. The policy also limits when an inmate with sickle cell disease may be sent to an off-site hospital – for acute problems or other serious complications. As to practice, plaintiff argues Wexford's practice was to avoid an off-site referral as long as possible. Plaintiff states that under Dixon's contract with Wexford, referrals to the off-site hospital were explicitly limited. Unfortunately, plaintiff does not provide the court with any Seventh Circuit precedent to support his position that alleging these policies and practices is sufficient to state a claim under *Monell*. Nevertheless, as noted in the court's previous ruling, to sufficiently plead a *Monell* claim, plaintiff must allege "that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). Additionally, the policy, custom, or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Here, the court cannot find that Wexford's formal policy on treating inmates with sickle cell anemia led to plaintiff's constitutional deprivation. Nor can the court find that Wexford's practice of limiting off-site referrals contributed to the harmed caused to plaintiff, considering he was sent to an off-site hospital on two separate occasions.

After a careful reading of plaintiff's proposed complaint, the court finds that plaintiff's arguments that the complaint asserts new theories of liability are without merit. Even with the additional facts regarding Chamberlain's contacts with plaintiff and Wexford's policies and practices, the proposed complaint fails to state a claim upon which relief may be granted. Therefore, the court finds that plaintiff's proposed first amended complaint would be futile and his motion for leave to file an amended complaint [79] is denied on the merits. The court directs plaintiff to file a first amended complaint that is consistent with the court's ruling on defendants' original motion to dismiss [68], as well as consistent with this opinion, within 14 days of the date of this order.

Dated: 09/05/2018          ENTER:

_____

United States District Court Judge

Electronic Notices. (LC)